| | |
|---|---|
| Carlos M. Suárez Molina<br><br>Recurrido<br><br>v.<br><br>Comisión Local de<br>Elecciones de Cataño, Et Al<br><br>Peticionario | Certiorari<br><br>2020 TSPR 129<br><br>205 DPR _____ |

Número del Caso:  CC-2020-436

Fecha:  23 de octubre de 2020

Tribunal de Apelaciones:

    Panel III

Abogado de la parte peticionaria:

    Lcdo. Luis Iván Quiñones Rosado

Abogado de la parte recurrida:

    Lcdo. Eduardo René Estades

    Comisión Estatal de Elecciones
    Lcdo. Jayson Caraballo Oquendo

 Parte con Interés:

    Comisionado Electoral del Partido
    Nuevo Progresista
    Lcdo. Carlos Padín Pérez

Materia:  Derecho electoral/ interpretación estatutaria: Ante el principio de especialidad, en los casos de una recusación contra un elector debe prevalecer el procedimiento particular para la revisión de la decisión de la Comisión Local dispuesto en el Art. 5.16 del Código Electoral de 2020. Aunque la frase "excepto lo dispuesto para las recusaciones por domicilio electoral" es indicativa de que el legislador tuvo la intención de establecer una excepción para las recusaciones por este motivo, el nuevo Código Electoral no dispuso expresamente el referido proceso tal como lo establecía la legislación predecesora en el artículo homólogo al Art. 4.5 del Código Electoral de 2020.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

# EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Carlos M. Suárez Molina<br><br>Recurrido<br><br>v.<br><br>Comisión Local de Elecciones de Cataño, Et Al<br><br>Peticionario | CC-2020-0436 | |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 23 de octubre de 2020.

Por segunda ocasión en este mes consideramos una controversia sobre el trámite procesal de la recusación de un elector estatuido en la Ley Núm. 58-2020, según enmendada, conocida como el Código Electoral de Puerto Rico de 2020 (Código Electoral de 2020).[1] En este caso corresponde resolver expresamente cuál es el trámite para revisar una determinación adversa emitida por el presidente de una Comisión Local en un proceso de recusación domiciliaria.[2]

---

[1] El martes, 13 de octubre de 2020 certificamos la Opinión <u>Gautier Vega <i>et al</i></u>. v. Com. Electoral PNP, 2020 TSPR 124, donde establecimos cuál era la fecha límite para presentar las solicitudes de recusación de electores. Esto al considerar la relación entre la ley especial, en tal caso la Resolución Conjunta 37-2020 adoptada específicamente para atender el retraso en el calendario electoral ante la pandemia por la enfermedad del coronavirus (COVID-19), frente a la disposición general del Art. 5.17 de la Ley Núm. 58-2020, según enmendada, conocida como Código Electoral de Puerto Rico de 2020 (Código Electoral de 2020).

[2] Dado que la facultad de revisión del presidente de la Comisión Estatal de Elecciones (CEE) había sido cuestionada ante la propia entidad y el Tribunal de Primera Instancia, y aún en el recurso ante nuestra consideración el segundo señalamiento de error formulado por la peticionaria estaba dirigido a cuestionar la falta de jurisdicción, en <u>Gautier Vega <i>et al</i></u>. v. Com. Electoral PNP, <i>supra</i>, expresamos: "a pesar de que la última oración del Art. 5.16(2) del Código Electoral de 2020 establece una excepción para la revisión judicial del trámite dirigido a la recusación por domicilio del elector, el Código Electoral de 2020 no estableció el referido proceso tal como disponía el Art. 5.005 del Código Electoral para el Siglo XXI. Así, en el presente caso y ante el vacío en la ley, **los foros <i>a quo</i> correctamente determinaron que el presidente de**

Para esta ocasión, ante la alegada excepción en el trámite de las recusaciones por domicilio, debemos recurrir al principio de especialidad en disposiciones legales dentro de un mismo cuerpo de normas. Como el Art. 13.2 del Código Electoral de 2020 está en una relación de general a especial respecto al Art. 5.16 de igual Código, resolvemos que esta última debe prevalecer sobre la primera. Dicho de otro modo, ante el principio básico *lex specialis derogat generali*, debe prevalecer el procedimiento particular de revisión de las determinaciones de la Comisión Local dispuesto en el Art. 5.16, sobre la disposición general para revisar cualquier otra determinación estatuida en el Art. 13.2 del Código Electoral de 2020.

Aunque la última oración del Art. 5.16 puede indicar que el legislador tuvo la intención de establecer una excepción para el trámite de revisión de las recusaciones domiciliarias, el Código Electoral de 2020 no estableció el referido proceso tal como disponía la legislación predecesora. Al contrario, una lectura integral de dicha disposición frente a lo estatuido en el Art. 4.5 del Código Electoral de 2020, homólogo a la disposición que contenía el procedimiento de excepción en la ley anterior, demuestra que para el nuevo Código la intención expresa del legislador fue uniformar el trámite de revisión de todas las determinaciones sobre

la Comisión Estatal de Elecciones poseía autoridad apelativa para atender la apelación del Comisionado Alterno del Partido Nuevo Progresista del Precinto 8 del Municipio de Cataño". (Énfasis nuestro).

recusaciones de electores y no excluir alguna causal en particular como la del domicilio. Veamos.

**I**

El 4 de agosto de 2020 la Comisión Local de Elecciones del Precinto Núm. 08 de Cataño ordenó la exclusión del Sr. Carlos M. Suárez Molina (señor Suárez Molina) del Registro General Electoral por entender que al momento de la recusación éste tiene su domicilio en el Municipio de Bayamón. No conforme, el 13 de agosto de 2020 el señor Suárez Molina presentó una apelación ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. La Comisión Local no presentó un escrito en oposición ni compareció a la vista de rigor. Luego de escuchar a la parte afectada, el 20 de agosto de 2020 el foro primario emitió *Sentencia* para revocar la determinación de recusación contra el señor Suárez Molina.

Ante esta determinación, el Sr. Isaías Medina Morales, en su capacidad de comisionado alterno del Partido Nuevo Progresista (PNP) del Precinto Núm. 08 de Cataño, presentó una *Solicitud de reconsideración de sentencia por falta de jurisdicción*. Adujo que, conforme dispone el Art. 5.16 del Código Electoral de 2020, relativo a la recusación de electores, el trámite correcto era agotar los remedios administrativos ante la CEE. Sin embargo, esta solicitud fue denegada por el foro primario.

Dada la denegatoria, el peticionario acudió mediante *certiorari* al Tribunal de Apelaciones. En *Sentencia* emitida

por votación dividida, con un voto particular disidente, el 25 de septiembre de 2020 dicho foro confirmó la *Sentencia* recurrida. La mayoría del Panel de jueces apelativos recurrido entendió que el Código Electoral de 2020 no obligaba al elector recusado por domicilio a agotar algún trámite administrativo. Razonó que la jurisdicción general de los tribunales quedó preservada por la falta de una expresión clara e inequívoca del legislador para dar jurisdicción exclusiva a la CEE en cuanto a la revisión de las determinaciones de las Comisiones Locales en materia de recusación domiciliaria.

El foro apelativo advirtió que para dilucidar cuál sería el proceso por seguir luego de existir un fallo adverso de la Comisión Local respecto a las recusaciones domiciliarias debía hacer una lectura integral del Código Electoral de 2020. Dijo esto porque el Art. 5.16 del nuevo Código dispuso una excepción respecto al trámite para las recusaciones por el domicilio del elector. Como tal trámite no fue dispuesto expresamente, el foro recurrido entendió que debía suplirlo con el trámite dispuesto en el Art. 13.2 del Código Electoral de 2020, a saber: "[c]ualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la Comisión Local, podrá, dentro de los diez (10) días siguientes a la notificación de esta, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de

revisión". Así, concluyó que el nuevo Código Electoral mantuvo el proceso de revisión de las determinaciones adversas de la Comisión Local por recusaciones domiciliarias ante el TPI y el término de 10 días desde la notificación.

Infructuosamente, el comisionado alterno del PNP en el Precinto Núm. 08 de Cataño solicitó la reconsideración del dictamen del foro apelativo. Por ello, recurrió ante este Tribunal mediante *certiorari*. Alegó, en esencia, que el foro revisado erró al no desestimar por falta de jurisdicción el recurso de apelación del señor Suárez Molina. Expuso que en Gautier Vega *et al.* v. Com. Electoral PNP, 2020 TSPR 124, en particular en el escolio núm. 16, habíamos acogido la interpretación de la CEE en cuanto a este asunto. Esto es, que a pesar de que en la última oración del Art. 5.16 del Código Electoral de 2020 parece establecer una excepción para la revisión judicial del trámite de recusación domiciliaria, el Código Electoral de 2020 no estableció el referido proceso tal como lo disponía el Art. 5.005 de la Ley Núm. 78-2011, conocida como el Código Electoral de Puerto Rico para el Siglo XXI (Código Electoral para el Siglo XXI). Así, ante el vacío en la ley, los foros *a quo* habían resuelto correctamente que el presidente de la CEE tenía autoridad apelativa para los procesos de recusaciones domiciliarias.[3]

Debido al alto interés público que representa la cuestión trabada en este recurso, le ordenamos a las partes

---

[3] Gautier Vega et al. v. Com. Electoral PNP, *supra*, esc. 16.

comparecer con su posición en un plazo de 24 horas, lo que cumplieron debidamente. En lo pertinente, el Hon. Francisco Rosado Colomer en su capacidad oficial de presidente de la CEE, compareció y reiteró el criterio del anterior presidente en el sentido de que, a diferencia de lo estatuido en el Código Electoral para el Siglo XXI, en el nuevo Código Electoral el legislador eliminó la excepción para las recusaciones por domicilio y en el Art. 4.5 añadió el lenguaje expreso de que las recusaciones debían ser presentadas, procesadas, evaluadas y adjudicadas "siguiendo rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley". Afirmó también lo dispuesto en el Art. 13.1 (2)(a) del Código Electoral de 2020 que requiere expresamente a la Rama Judicial conceder deferencia al *expertise* de la CEE. Luego de que las partes expusieran sus posiciones, estamos listos para resolver.

## II

### A. Recusación de electores: revisión judicial

La recusación es el procedimiento para impugnar el estatus de un elector en el Registro General de Electores (Registro).[4] El Art. 5.16 del Código Electoral 2020 establece los fundamentos por los cuales un elector puede ser recusado, entre los cuales se encuentra el domicilio del elector. La validez de una solicitud de recusación, según la referida norma legislativa, está sujeta a un acuerdo unánime de los miembros de la Comisión

---

[4] Art. 2.3(94) del Código Electoral de 2020.

Local, o en su defecto, del presidente de la Comisión Local, quien determinará finalmente si ésta procede de manera concluyente y mediante prueba clara, robusta y convincente.[5] En cuanto a la determinación del presidente de la Comisión Local sobre la recusación y el trámite para recurrir, el Art. 5.16 lee como sigue:

> […] El Presidente de la Comisión Local especificará en la orden de exclusión si la decisión fue tomada por unanimidad o por determinación del Presidente de la Comisión Local y la razón de la exclusión. También deberá notificar de su acción a la Comisión, Comisionados Locales, al recusador y al recusado. La ausencia del Elector recusado de la vista, no releva al recusador de presentar pruebas. **Tanto el recusado como el recusador podrán apelar ante la <u>Comisión</u> la determinación dentro de los cinco (5) días siguientes, <u>excepto lo dispuesto</u> para las recusaciones por domicilio electoral**. (Énfasis nuestro).

Hay que notar que este trámite para las recusaciones es uno particular dentro del proceso general establecido para las apelaciones de las decisiones tomadas por acuerdo de los comisionados locales o por el presidente de la Comisión Local. En lo pertinente, el Art. 4.5 del Código Electoral 2020 dispone:

> (4) Toda apelación a una decisión del Presidente de la Comisión Local, **excepto en los casos de recusación <u>contra un Elector</u>**, deberá notificarse en la misma sesión en que se tome la decisión apelada y antes de que se levante dicha sesión y deberá hacerse constar en el acta de la reunión mediante la expresión de los fundamentos de la apelación. […]. **Las recusaciones contra Electores solo se presentarán, procesarán, evaluarán y adjudicarán siguiendo <u>rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley</u>** (énfasis nuestro).

---

[5] Art. 5.4(4) y 5.7(1) del Código Electoral de 2020, *supra*.

Por su parte, en lo relativo a la revisión judicial de las decisiones de la Comisión Estatal de Elecciones o la Comisión Local, el Art. 13.2 del Código Electoral de 2020 dispone:

> **<u>Con excepción de otra cosa dispuesta</u> en esta Ley:**
>
> (1) Cualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la Comisión Local podrá, dentro de los diez (10) días siguientes a la notificación de esta, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de revisión. (Énfasis nuestro).

## B. El principio de especialidad en un estatuto

Este Tribunal ha reiterado como principio básico en la interpretación de estatutos que una disposición de carácter especial sobre la materia prevalece sobre una de carácter general.[6] A tenor con este principio, desde hace mucho tiempo, este Tribunal ha sostenido lo siguiente:

> Cuando hay dos leyes o disposiciones, de las cuales una es especial y particular e incluye ciertamente la materia en controversia, y la otra tan general que de subsistir sola incluiría la misma materia, y vendría en conflicto con la ley o disposición especial, debe entenderse que la especial constituye una excepción a la ley o disposición general, especialmente cuando la ley general y la especial son contemporáneas, pues no se presume que la Asamblea Legislativa intentó crear un conflicto.[7]

Dicho de otro modo, cuando la disposición general de un estatuto es contraria a "lo que específicamente trata y regula otro precepto de ese mismo estatuto, cede y da paso al último,

---

[6] <u>Pueblo v. Plaza Plaza</u>, 199 DPR 276, 285-286 (2017).

[7] <u>Ex parte Ramos</u>, 53 DPR 374, 378 (1938).

como expresión de la verdadera voluntad e intención del legislador".[8]

Así, al interpretar una disposición legal específica debemos evaluar las diferentes secciones de la ley en que ubica y relacionarlas las unas con las otras, para, dentro del contexto general en que han sido redactadas, atribuirles el sentido que mejor responda a lo que se ha querido obtener con su aprobación.[9]

Las fuentes extrínsecas al texto de la ley como el historial legislativo es un recurso aliado en nuestra función adjudicativa.[10] Dicho esto, las circunstancias particulares de este caso nos llevan a auscultar no solo las disposiciones pertinentes, sino también la ley predecesora del Código Electoral de 2020 y su jurisprudencia interpretativa. Incluso, debemos considerar la interpretación que ha dado a estas disposiciones la agencia que administra la ejecución del Código Electoral, la cual merece nuestra deferencia.

Sobre esto último hay que resaltar que el Art. 13.1 del Código Electoral de 2020 dispone que: "[e]n todo recurso legal, asunto, caso o controversia que se presente en un Tribunal de Justicia, este deberá dar prioridad a la deferencia que debe demostrar a las decisiones tomadas por la

---

[8] Íd., pág. 377.

[9] Eng'g Servs. Int'l v. AEE, 2020 TSPR 103, 205 DPR ___ (2020); Asoc. FCIAS. v. Caribe Specialty II, 179 DPR 923, 939-940 (2010).

[10] Cordero Vargas v. Pérez Pérez, 198 DPR 848, 864 (2017); Const. José Carro v. Mun. Dorado, 186 DPR 113, 127 (2012).

Comisión a nivel administrativo, siendo esta la institución pública con mayor [*expertise*] en asuntos electorales y la responsable legal de implementar los procesos que garanticen el derecho fundamental de los electores a ejercer su voto en asuntos de interés público".[11] Este Tribunal ha expresado que esta interpretación merece gran respeto y deferencia sustancial, aún en casos marginales o dudosos o cuando la interpretación del ente electoral especializado no sea la única razonable.[12]

## III

Como establecimos, las recusaciones de electores es un proceso especial o particular estatuido en los Arts. 5.16, 5.17 y 5.18 del Código Electoral de 2020.[13] La especialidad a la que haremos referencia es en cuanto al proceso apelativo de los acuerdos tomados por los comisionados locales o las determinaciones emitidas por el presidente de la Comisión Local. Así, nos corresponde determinar cuál es la disposición que prevalece en cuanto a la solicitud de revisión de una recusación domiciliaria. Hay que notar que en el Código Electoral para el Siglo XXI la disposición análoga al Art. 5.16 lo era el Art. 6.017.[14] Esta disposición, en lo pertinente y en particular en su último párrafo leía igual que el actual, a

---

[11] Art. 13.1 del Código Electoral de 2020, *supra*.

[12] Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 78-79 (2009).

[13] Art. 4.5(4) del Código Electoral de 2020, *supra*.

[14] 16 LPRA sec. 4077, derogado.

saber: "[t]anto el recusado como el recusador podrán apelar ante la Comisión la determinación dentro de los cinco (5) días siguientes, **excepto lo dispuesto para las recusaciones por domicilio electoral**". (Énfasis nuestro).[15]

Por su parte, el equivalente al Art. 4.5 del Código Electoral 2020 lo es el Art. 5.005 del Código Electoral para el Siglo XXI. En lo pertinente, tal disposición en la ley anterior expresaba:

> Toda apelación a una decisión del Presidente (a) de una comisión local, **excepto en los casos de recusación por domicilio**, deberá notificarse en la misma sesión en que se tome la decisión apelada y antes de que se levante dicha sesión. […]
>
> **En los casos de recusaciones por domicilio, tanto el o la recusado (a) como el recusador o recusadora podrán apelar dentro del término de diez (10) días la determinación de la comisión local en el Tribunal de Primera Instancia designado de conformidad al Capítulo IV de esta Ley.**
>
> […]. (Énfasis nuestro).[16]

Antes habíamos expresado que esta norma legislativa disponía "**expresamente** el mecanismo apelativo de las decisiones de la Comisión Local **y, en específico, las atinentes a la recusación por razón de domicilio**". (Énfasis nuestro).[17]

---

[15] Art. 6.017 de la Ley Núm. 78-2011, conocida como el Código Electoral de Puerto Rico para el Siglo XXI (Código Electoral para el Siglo XXI), 16 LPRA sec. 4077, derogada.

[16] Art. 5.005 del Código Electoral para el Siglo XXI, 16 LPRA sec. 4045, derogada.

[17] Ríos Martínez, Com. Alt. PNP v. CLE, 196 DPR 289, 303 (2016), caso donde al amparo del Código Electoral para el Siglo XXI, aclaramos cuál era el término para solicitar la revisión judicial de determinaciones de la Comisión Local en recusaciones por domicilio.

Como podemos ver, respecto al Art. 5.005 derogado existen unas diferencias claras en comparación con su homólogo Art. 4.5 en el Código Electoral de 2020. En primer lugar, en el segundo párrafo del Art. 5.005, no existe la oración que menciona expresamente las disposiciones relativas a las recusaciones. Es decir, en el nuevo Código el legislador añadió expresamente que: "[l]as recusaciones contra Electores **solo** se presentarán, procesarán, evaluarán y adjudicarán **siguiendo rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley**". (Énfasis nuestro).

En segundo lugar, en el nuevo articulado no aparece el tercer párrafo del Art. 5.005 de la ley anterior que **disponía expresamente** el procedimiento para apelar las determinaciones en los casos de recusaciones por domicilio, es decir, la excepción que se anunciaba en el párrafo anterior. Al contrario, al comparar la excepción de la primera oración del Art. 5.005 de la ley anterior ("excepto en los casos de recusación **por domicilio**") con la primera oración del Art. 4.5(4) del Código Electoral de 2020 ("excepto en los casos de recusación **contra un Elector**"), surge claramente la eliminación inequívoca de la excepción para las recusaciones por domicilio para uniformar el procedimiento de todas las recusaciones.

En su sentencia, y con relación a la palabra "excepto" del Art. 5.16, el Tribunal de Apelaciones concluyó de manera enfática que "el legislador no permite dar un tratamiento igual al proceso de apelación de las determinaciones de la Comisión

Local sobre las recusaciones comunes, frente a las recusaciones por domicilio electoral".[18] En otras palabras, sostuvo el foro apelativo intermedio que la intención inequívoca del legislador fue establecer un tratamiento diferente entre los distintos tipos de recusaciones. Sin embargo, nos parece que tal interpretación no es la que mejor se ajusta a los actos del legislador.

Concluimos en este caso que al eliminar el proceso de recusación por domicilio que había en la ley anterior, la referencia a este en la nueva legislación constituye un error del legislador; es decir, es una referencia a lo que ya no existe. Se trata de un error de redacción, al copiar un texto de la ley anterior, pero sin incluir, a su vez, la disposición a la que ese texto se refiere. Lo determinante aquí es aplicar el texto de la ley, tal como lo establece la norma de hermenéutica más básica del aún vigente Código Civil: "[c]uando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".[19] No podemos incorporar un proceso de recusaciones que el legislador derogó expresamente. A la luz de todo lo antes dicho, nos resulta más lógico y razonable concluir que, al eliminar en el Art. 4.5 del nuevo Código **todo un párrafo** la intención del legislador fue uniformar el trámite de todas las recusaciones.

---

[18] Sentencia del Tribunal de Apelaciones, pág. 7.

[19] Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14.

Así, y en conclusión, determinamos que en materia de la recusación por domicilio debe prevalecer el procedimiento especial de las recusaciones del Art. 5.16 del Código Electoral de 2020, que por la expresión legislativa en el Art. 4.5 debe ser seguido rigurosamente, frase que no existía en la ley anterior. Ante la claridad de la referencia en el Art. 4.5 del Código Electoral de 2020 al procedimiento especial del Art. 5.16 y no así respecto al procedimiento excepcional para las recusaciones de domicilio que antes existía, tenemos que aplicar el principio de especialidad entre disposiciones de una misma ley.

A lo antes dicho, hay que añadir que la interpretación final emitida por la CEE en el contexto de un procedimiento adjudicativo donde se cuestionaba su facultad apelativa en casos de recusación por domicilio es cónsona con la interpretación que hoy pautamos en este caso.[20] Como hemos dicho, tal interpretación fue validada por los foros inferiores y afirmada por este Tribunal en Gautier Vega *et al.* v. Com. Electoral PNP, *supra*, escolio núm. 16. Así, con lo hoy resuelto en este caso, damos respeto y deferencia al razonamiento de la CEE como organismo especializado, en armonía con el Art. 13.1

---

[20] Específicamente, en In re: Apelación Cataño 08 sobre recusaciones por domicilio, Resolución CEE-RS-20-142 de 29 de julio de 2020, la CEE resolvió: "[d]istinto al Art 5. 005 del Código Electoral anterior, la derogada Ley Núm. 78-2011, el vigente no dispone que las apelaciones de las recusaciones por la causal de domicilio se tengan que presentar ante el Tribunal de Primera Instancia. De acuerdo con el ordenamiento vigente, estas apelaciones se atienden en la CEE a nivel central, siguiendo rigurosamente lo dispuesto en los artículos 5.16 al 5.18 del Código Electoral de Puerto Rico de 2020. En su consecuencia, la CEE a nivel central **SI** tiene jurisdicción y competencia para atender en los méritos la apelación de epígrafe." (Énfasis en el original). Íd., pág. 3.

del Código Electoral 2020, *supra*, y la doctrina jurisprudencial firmemente establecida por este foro.

**IV**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se revocan las sentencias emitidas por los foros *a quo*. Por consiguiente, prevalece la decisión de la Comisión Local de Elecciones del Precinto Núm. 08 de Cataño.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos M. Suárez Molina

    Recurrido

       v.                **CC-2020-0436**

Comisión Local de Elecciones
Cataño, Et Al

    Peticionario

**SENTENCIA**

San Juan, Puerto Rico, a 23 de octubre de 2020.

Por los fundamentos antes expuestos, se expide el auto de *Certiorari* y se revocan las sentencias emitidas por los foros *a quo*. Por consiguiente, prevalece la decisión de la Comisión Local de Elecciones del Precinto Núm. 08 de Cataño.

**Notifíquese inmediatamente por teléfono y por correo electrónico.**

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Rodríguez y los Jueces Asociados señor Rivera García y señor Colón Pérez emitieron Opiniones disidentes. La Juez Rodríguez Rodríguez inhibida. El Juez Asociado señor Estrella Martínez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos M. Suárez Molina

    Recurrido

        v.

Comisión Local de Elecciones de Cataño, et al

    Peticionario

*Certiorari*

CC-2020-0436

Opinión disidente que emitió la Jueza Presidenta ORONOZ RODRIGUEZ.

En San Juan, Puerto Rico, a 23 de octubre de 2020.

Nuevamente, una mayoría de este Tribunal se sirve de un análisis apresurado y errado para insistir en desplazar una disposición que consta expresamente en el Código Electoral de 2020, <u>infra</u>. En esta ocasión, la Mayoría utiliza el principio de *lex specialis derogat generali* como subterfugio para reconocerle *de facto* a la Comisión Estatal de Elecciones (CEE) jurisdicción apelativa exclusiva para revisar por primera vez una determinación de la Comisión Local en materia de recusación de electores. Esto cuando **no** existe una designación clara y precisa del legislador para ello, y cuando lo anterior está en contravención directa con el Art. 13.2 del Código Electoral de 2020,

<u>infra</u>. Ese artículo faculta expresamente al Tribunal de Primera Instancia para atender todas las determinaciones de la Comisión Local, siempre que ese trámite no sea incongruente con otras disposiciones del estatuto.

Nada en el Código Electoral de 2020, <u>infra</u>, dispone la intención clara y precisa del legislador de concederle jurisdicción apelativa exclusiva a la CEE para revisar las determinaciones de la Comisión Local sobre las recusaciones. Por ello disiento.

La Ley claramente dispone que una parte afectada adversamente por esa determinación puede optar por solicitar la apelación a la CEE, conforme al Art. 5.16, **o** al Tribunal de Primera Instancia, conforme al Art. 13.2 del Código Electoral de 2020, <u>infra</u>.

I

Sobre las recusaciones de electores, el inciso 4 del Art. 4.5 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020 (Código Electoral), dispone que **"[l]as recusaciones contra Electores solo se presentarán, procesarán, evaluarán y adjudicarán** siguiendo **rigurosamente** las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley". (Énfasis suplido).[21] Del texto de esa disposición **se desprende**

---

[21] El inciso 4 del Art. 4.5 del Código Electoral de Puerto Rico de 2020, Ley Núm. 58-2020, lee como sigue:

(4) Toda apelación a una decisión del Presidente de la Comisión Local, excepto en los casos de recusación contra un Elector, deberá notificarse en la misma sesión en que se tome la decision apelada y antes de que se levante dicha sesión y deberá hacerse constar en el acta de la reunion mediante la expresión de los fundamentos de la apelación. Además, en caso de que la parte apelante

**diáfanamente una lista taxativa** de las etapas del procedimiento de recusación de electores en las que se exige tal rigurosidad. Según el articulado, ese estándar aplica a la presentación, procesamiento, evaluación y adjudicación de las recusaciones. **No se hace mención alguna al proceso de revisión de las determinaciones sobre recusaciones en alguno de esos tres artículos.**

Así, el extenso Art. 5.16 del Código Electoral, supra, dispone el procedimiento para la recusación de electores bajo varios fundamentos. Entre estos figura la recusación de electores por la causal de domicilio. Art. 5.16(1)(b), Código Electoral, supra. Sobre **la presentación** de las recusaciones, el Art. 5.16 del Código Electoral, supra, dispone, entre otros requisitos, que las solicitudes de recusación por las causales de ciudadanía, domicilio, edad e identidad **"deberán presentarse** juramentadas ante la Comisión Local del precinto al cual corresponda el Elector". Íd. Con relación a **su procesamiento**, dispone que el Presidente de

interese presentar un escrito adicional a la apelación, así como documentos de apoyo, los mismos deberán ser tramitados al Secretario en un término no mayor de cuarenta y ocho (48) horas. Las recusaciones contra Electores solo se presentarán, procesarán, evaluarán y adjudicarán siguiendo rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley.

Aunque en ese inciso del Art. 4.5 se habla de las apelaciones a las decisiones del Presidente de la Comisión Local, este dispone que las apelaciones de los casos de recusación contra un elector se atenderán de forma distinta a lo dispuesto en ese inciso. Nótese que en el inciso el legislador no dispuso cómo se atenderían esas apelaciones. En cambio, optó por incluir una directriz general para todas las recusaciones en la que dispuso que estas se presentarán, procesarán, evaluarán y adjudicarán siguiendo rigurosamente lo dispuesto en los Arts. 5.16, 5.17 y 5.18 del Código Electoral, supra.

la Comisión Local "**señalará** una vista dentro de los diez (10) días siguientes para oír la prueba que corresponda, debiéndose citar al Elector recusado, al recusador y a cualquier otra persona que las partes solicitaren sea citada". Íd. Indica además que se le notificará de la vista a los Comisionados Locales y a los presidentes municipales de los comités políticos de los distintos partidos políticos. Íd. Sobre **su evaluación**, dispone que esta le corresponderá en primera instancia a los miembros de la Comisión Local.[22] Íd. Finalmente, en lo relacionado a **su adjudicación**, se dispone que la validez de la recusación "**será decidida** por acuerdo unánime de los miembros presentes de la Comisión Local al momento de atender la misma". Íd. Dispone además que "[c]uando no hubiere tal unanimidad, la recusación será decidida por el Presidente de la Comisión Local, siendo esta la única ocasión en que […] podrá intervenir en una recusación". Íd.

Nótese que, con relación al procedimiento aplicable a cada una de las etapas anteriores, el legislador utilizó lenguaje mandatorio. No obstante, no existe rastro de lenguaje de ese tipo para efectos del trámite para revisar una determinación de la Comisión Local sobre una recusación. La única referencia al trámite apelativo que se hace en ese artículo es: "Tanto el recusado como el recusador **podrán** apelar ante la Comisión la

---

[22] El Art. 5.18 del Código Electoral, Ley Núm. 58-2020 (Código Electoral), dispone las guías para la presentación y evaluación de la prueba en las recusaciones por la causal de edad.

determinación dentro de los cinco (5) días siguientes, excepto lo dispuesto para las recusaciones por domicilio electoral". Íd. Aun si calificáramos como un error del legislador la excepción expresa para las apelaciones de recusaciones por domicilio electoral que consta en ese estatuto, nada en el Art. 5.16 o en el Art. 4.5(4) del Código Electoral, supra, dispone la que la jurisdicción apelativa de la CEE para atender esas apelaciones es exclusiva.

Por otro lado, el Art. 5.1(7) del Código Electoral, supra, dispone el derecho a la "protección del Elector contra todo acecho u hostigamiento de otro para formular una recusación que pretenda excluirlo del Registro General de Electores y, por ende, privarlo de su derecho al voto". Ese artículo también dispone que "[s]e concede a los electores la legitimación activa para iniciar o promover cualesquiera acciones legales al amparo de [ese] Artículo, ante el Tribunal de Primera Instancia que corresponda de conformidad con el Capítulo XIII de esta Ley". Íd.

En el Capítulo XIII del Código Electoral, supra, específicamente en el Art. 13.2, se dispone:

> **Con excepción de otra cosa dispuesta en esta Ley:**
> (1) Cualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión **o la Comisión Local podrá**, dentro de los diez (10) días siguientes a la notificación de esta, **recurrir al Tribunal de Primera Instancia** con la presentación de un recurso legal de revisión. (Énfasis suplido).

En la Opinión mayoritaria se expresó que, en lo concerniente al principio de especialidad, "cuando la disposición general de un estatuto **es contraria** a 'lo que específicamente trata y regula otro precepto de ese mismo estatuto, cede y da paso al último, como expresión de la verdadera voluntad e intención del legislador'". Opinión mayoritaria, pág. 8 (*citando a* Ex parte Ramos, 53 DPR 374, 378 (1938)) (Énfasis supplido). Por ello, una Mayoría de este Tribunal razonó que al "interpretar una disposición legal específica debemos evaluar las diferentes secciones de la ley en que ubica y relacionarlas las unas con las otras, para, dentro del contexto general en que han sido redactadas, atribuirles el sentido que mejor responda a lo que se ha querido obtener con su aprobación". Opinión mayoritaria, pág. 9. Si se sigue ese razonamiento, es forzoso concluir que la frase "[c]on excepción de otra cosa dispuesta en esta Ley", según expuesta en el Art. 13.2 del Código Electoral, supra, supone que lo que allí se estatuye no aplica cuando existe una contradicción insuperable con otra disposición.

El problema con la interpretación de la Opinión mayoritaria es que **tal contradicción no existe** entre el trámite apelativo interagencial que propone el Art. 5.16 para las determinaciones sobre recusaciones y el trámite apelativo judicial que se dispone en el Art. 13.2(1) del Código Electoral, supra, para la apelación de determinaciones de la Comisión Local. Lo anterior pues no

consta **en ninguna parte del Código Electoral**, supra, la intención clara y precisa del legislador de que la CEE tiene jurisdicción apelativa exclusiva de las determinaciones de la Comisión Local en materia de recusaciones de electores. Dado que el Art. 4.5(4) del Código Electoral, supra, solo instruye el seguimiento riguroso de la presentación, procesamiento, evaluación y adjudicación de las recusaciones contra electores, **y nada dispone sobre la apelación de esos dictámenes**, ese texto legislativo sustenta la conclusión de que seguir el trámite apelativo interagencial propuesto en el Art. 5.16 del Código Electoral, supra, es permisible, mas no compulsorio. Ante esto, debimos aplicar la regla de hermenéutica que nos instruye a realizar interpretaciones armoniosas de la ley antes de declararlas contradictorias. Sobre lo anterior, este Tribunal expresó en Bco. Santander v. Correa García, 196 DPR 452, 465-466 (2016), lo siguiente:

> [E]s importante destacar que al realizar un análisis de disposiciones que aparentan ser contradictorias entre sí, los tribunales deben primeramente hacer una interpretación armoniosa de la ley, de manera que sus disposiciones logren ser compatibles y no contradictorias. Ello se fundamenta en el canon de interpretación hermenéutica sobre lectura armoniosa, que exige que al interpretar una ley, los tribunales deben armonizar, hasta donde sea posible, todas sus disposiciones con el propósito de obtener una interpretación integrada, lógica y razonable de la intención legislativa. "Armonizar" significa "[p]oner en armonía, o hacer que no discuerden o se rechacen dos o más partes de un todo, o dos o más cosas que deben concurrir al mismo fin". Así, las secciones, los párrafos, las frases y las oraciones que componen una ley no deben ser

interpretadas de forma aislada, sino que deben analizarse en conjunto tomando en consideración todo su contexto de manera integral. (Citas omitidas).

En vista de lo anterior, **la controversia medular ante nosotros giraba en torno a la aplicación de la doctrina de jurisdicción concurrente** —en este caso, en el trámite apelativo— **y no en torno al principio de especialidad.**

II

Nuestros tribunales son de jurisdicción general, por lo que cuentan con la autoridad para "atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". Rodríguez Rivera v. De León Otano, 191 DPR 700, 708 (2014). Por ello, privar al tribunal de su autoridad para atender algún asunto particular requiere de un acto legislativo claro y preciso que conste expresamente en algún estatuto o que surja de este por implicación necesaria. Rodríguez Rivera v. De Leon Otaño, 191 DPR 700, 709 (2014); Junta Dir. Cond. Montebello v. Fernández, 136 DPR 223, 230 (1994). Es decir, para que una agencia tenga jurisdicción exclusiva para atender cierto asunto, **esa designación se debe desprender de la ley de forma clara y precisa.** Beltrán Cintrón v. ELA, 2020 TSPR 26, 7.

De esa forma, el legislador puede conferirle a un organismo agencial jurisdicción exclusiva para revisar por primera vez una decisión administrativa. Rivera Ortiz v. Mun. de Guaynabo, 141 DPR 257, 268-269 (1996). Sin

embargo, cuando la ley permite que una acción se apele tanto en el foro administrativo como en el judicial, estamos ante la doctrina de abstención judicial de jurisdicción concurrente. Esa doctrina dicta que el foro judicial se debe abstener de ejercer la jurisdicción que ostenta sobre un asunto hasta tanto la agencia administrativa pase juicio sobre ello. Rodríguez Rivera v. De León Otaño, supra, pág. 710. Lo anterior, pues es recomendable otorgarle deferencia a la agencia por su "destreza o pericia, la prontitud usual del proceso de decisión [y] el uso de técnicas de adjudicación más flexibles". Ferrer Rodríguez v. Figueroa, 109 DPR 398, 402 (1980). Así, hemos expresado que "los jueces deben aplicar esta norma de abstención, como regla general, 'en casos en los cuales **el peritaje de la agencia sea indispensable para resolver la controversia**, ya que los 'tribunales [son] de justicia y no centros académicos para dirimir sutilezas técnicas". Beltrán Cintron v. ELA, supra, pág. 6 (citando a Báez Rodríguez v. ELA, 179 DPR 231, 240 (2010))(Énfasis suplido).

No obstante, hemos reiterado que esa doctrina "no es una camisa de fuerza, y bajo ciertas circunstancias hemos reconocido su inaplicabilidad". Rodríguez Rivera v. De León Otaño, supra. Según hemos expresado, la doctrina "no aplica cuando '[l]a naturaleza de la causa de acción presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de peritaje administrativo, es decir,

cuando la cuestión que se plantea sea puramente judicial'" Íd. (*citando a* Consejo Titulares v. Gómez Estremera, 184 DPR 407, 430 (2012)).

III

El Art. 5.16 del Código Electoral, supra, provee un mecanismo para apelar una determinación de la Comisión Local de una recusación de un elector ante la CEE. Sin embargo, ese artículo **no dispone la única forma** en la que una parte adversamente afectada por la determinación de la Comisión Local de una recusación puede apelar el dictamen. Distinto al razonamiento que esbozó una mayoría de este Tribunal, el lenguaje del Art. 4.5(4) no dispone en forma alguna su aplicación al trámite apelativo propuesto en el Art. 5.16 del Código Electoral, supra. Por consiguiente, el legislador no expresó **de manera clara y precisa** —ya sea expresamente o por implicación necesaria— su intención de otorgarle jurisdicción apelativa exclusiva a la CEE sobre la revisión de las recusaciones de electores. La intrepretación armoniosa **de las dos disposiciones en controversia que le otorgan expresamente jurisdicción a ambos foros** debió movernos a concluir que existe jurisdicción apelativa concurrente entre la CEE y el Tribunal de Primera Instancia para revisar esas determinaciones. Discrepo de la Opinión mayoritaria pues resuelve que la intención legislativa fue privarle al Tribunal de Primera Instancia jurisdicción para atender ese asunto.

A tenor con lo anterior, una vez aclarada la jurisdicción apelativa concurrente que ostentan ambos foros, debimos auscultar si el Tribunal de Primera Instancia debió abstenerse de revisar el dictamen que emitió la Comisión Local de Elecciones del Precinto Núm. 008 de Cataño. Esto a la luz de la doctrina de jurisdicción concurrente. Al amparo de esa doctrina, el foro judicial se debe abstener cuando **el peritaje de la agencia sea indispensable para resolver la controversia**. Sin embargo, cuando no se presentan cuestiones de derecho que exijan el ejercicio de la discreción y del peritaje administrativo, los tribunales pueden atender la controversia.

El proceso de recusación de un elector incide directamente en el derecho fundamental a ejercer su voto. Ese derecho está consagrado en el Art. II, Sección 2, de nuestra Constitución. Const. PR, Art. II, Sec. 2, LPRA, Tomo 1. En particular, este dispone que "[l]as leyes garantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". Íd. A tenor de lo anterior, el Art. 5.1 del Código Electoral, supra, reconoce, entre otros derechos, la protección del elector contra una recusación inoficiosa. Ese artículo le concede a los electores legitimación para iniciar o promover cualquier acción legal ante el Tribunal de Primera Instancia en protección a los derechos y prerrogativas

allí enumeradas. Aunque, en definitiva, la CEE ostenta cierta pericia en materia de recusaciones de electores, me parece sumamente persuasivo que el legislador dispuso **expresamente** la capacidad del foro primario para atender asuntos de esa materia en particular. Por lo tanto, el foro judicial es apropiado para revisar las determinaciones de la Comisión Local en materia de recusaciones por domicilio como la que se presentó en este caso. Máxime si se toma en consideración que, bajo el Art. 5.005 del anterior Código Electoral de Puerto Rico para el Siglo XXI, Ley Núm. 78-2011, 16 LPRA sec. 4045. (derogado), el Tribunal de Primera Instancia era el **único** foro facultado para revisar las determinaciones de la Comisión Local en torno a las recusaciones por domicilio.

En vista de lo anterior, correspondía resolver que el Sr. Carlos Suárez Molina podía optar por cualquiera de los dos foros para llevar su reclamo. Debido a que presentó oportunamente su recurso de revisión ante el Tribunal de Primera Instancia —conforme al Art. 13.2 del Código Electoral, supra— y los tribunales inferiores actuaron correctamente al no desestimar su recurso, no era necesario intervenir en esta controversia. Como una mayoría de este Tribunal resolvió lo contrario, disiento.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Carlos M. Suárez Molina<br><br>Recurrido<br><br>v.<br><br>Comisión Local de Elecciones de Cataño<br><br>Peticionario | CC-2020-0436 |

**Opinión disidente emitida por el Juez Asociado señor RIVERA GARCÍA.**

En San Juan, Puerto Rico, a 23 de octubre de 2020.

La interpretación más cónsona con el historial legislativo del Código Electoral de Puerto Rico de 2020 (Código Electoral de 2020), Ley Núm. 58-2020, es que la jurisdicción para revisar las recusaciones por domicilio corresponde al Tribunal de Primera Instancia y no a la Comisión Estatal de Elecciones (CEE). Debido a que es otra la apreciación de una Mayoría de los miembros de este Tribunal sobre la norma que instituye este estatuto, respetuosamente **disiento**.

I

El Código Electoral de 2020, *supra*, derogó el Código Electoral de Puerto Rico para el Siglo XXI, Ley Núm. 78-2011. Para ello, como parte de su aprobación, el Código Electoral

de 2020 estuvo en trámite legislativo por más de un año.[23]

Precisamente, durante este proceso el Proyecto del Senado 1314 de 10 de junio de 2019, 5ta Sesión Ordinaria, 18va Asamblea Legislativa (Proyecto del Senado 1314) ⸺posterior Código Electoral de 2020⸺ recibió varias enmiendas sustanciales.

A esos efectos, el Proyecto del Senado 1314, *supra,* pág. 143, estableció que "[l]as recusaciones contra electores solo se presentarán, procesarán, evaluarán y adjudicarán siguiendo rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley".[24] En esa dirección, el proyecto instituía la normativa que imperaría en la recusación de los electores en el Art. 5.16, el procedimiento para las recusaciones de los electores en el Art. 5.17 y las causales de recusación en el Art. 5.18.

Entre otras cosas, el Art. 5.16 propuesto originalmente señalaba la legitimación para promover las recusaciones, el peso de la prueba para la recusación, las prohibiciones sobre acecho u hostigamiento contra el elector y su núcleo familiar, así como los términos aplicables para toda recusación.

---

[23] El Proyecto del Senado 1314 se presentó el 10 de junio de 2019 hasta convertirse en ley el 20 de junio de 2020. Sistema Único de Trámite Legislativo (SUTRA), Prontuario de Leyes: Ley 58 del 20 de junio de 2020, https://sutra.oslpr.org/osl/esutra/Prontuario.aspx?rid=129908.

[24] Art. 4.5(4) del Proyecto del Senado 1314 de 10 de junio de 2019, 5ta Sesión Ordinaria, 18va Asamblea Legislativa, pág. 143 (Adelantamos que esta parte del Art. 4.5 no sufrió cambios relevantes en el trámite de evaluación del proyecto de ley). Véase, además, el Art. 5.4, pág. 161.

El Art. 5.17 establecía **el procedimiento para la recusación** de los electores. El inciso (7) indicaba que "[l]a determinación final de la Comisión Local sobre una recusación no ser[ía] apelable a la Comisión Estatal. Solo se podr[ía] apelar a la Comisión Estatal **el procedimiento** utilizado para la determinación final sobre una recusación". (Énfasis suplido).[25] Asimismo, el inciso (8) expresaba lo siguiente:

> Cualquier parte adversamente afectada por la determinación final de la Comisión Local sobre una recusación en sus méritos —de hecho, o derecho-, que no sea por mal presentada y no puesta, **podrá recurrir con solicitud de revisión judicial conforme al proceso y los términos establecidos en el Capítulo XIII de esta Ley**. Si hubiere conflicto debido a que el juez del Tribunal de Primera Instancia es también Presidente de la Comisión Local, la apelación será atendida por otro juez del Tribunal de Primera Instancia. (Énfasis suplido).[26]

En ese sentido, en lo referente a las recusaciones, el Proyecto del Senado 1314 le confería jurisdicción a la CEE para revisar sólo **el proceso** que se siguió para una recusación, no la recusación propiamente. La determinación de la Comisión Local de recusar a un elector era revisable judicialmente en los tribunales, de conformidad con el Capítulo XIII.[27] En ese momento el proyecto no hacía distinción entre el proceso de revisión que debía llevarse a

---

[25] Proyecto del Senado 1314 de 10 de junio de 2019, *supra*, pág. 183.

[26] Íd.

[27] En lo pertinente, el Art. 13.2 del Proyecto del Senado 1314, *supra*, establecía que salvo se dispusiera otra cosa en el estatuto, "[c]ualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la Comisión Local podrá, dentro de los diez (10) días siguientes a la notificación de ésta, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de revisión".

cabo según la causal o motivo de la recusación. Es decir, no diferenciaba la jurisdicción de la CEE y los tribunales basado en la causal para la solicitud de la recusación. La jurisdicción era de los tribunales para pasar juicio sobre los méritos y no de la CEE, quien se debía limitar a asuntos procesales.

Ahora bien, como parte del trámite de enmiendas al proyecto de ley, la Asamblea Legislativa realizó varias modificaciones significativas a las disposiciones citadas. En particular, el Art. 5.16 del Proyecto del Senado 1314, *supra*, se enmendó para sustituir totalmente su contenido.[28] En su lugar, en este artículo se dispusieron los fundamentos para una solicitud de recusación, los requisitos de una solicitud a estos efectos y el procedimiento que llevaría a cabo la Comisión Local.[29] En lo pertinente, la última oración incorporada en el Art. 5.16, *supra*, expresó que "[t]anto el recusado como el recusador podrán apelar ante la Comisión la determinación dentro de los cinco (5) días siguientes, **excepto lo dispuesto para las recusaciones por domicilio electoral**". (Énfasis y subrayado suplido).[30]

Por otro lado, el Art. 5.17 propuesto se enmendó para establecer únicamente el periodo para la recusación de electores. Como consecuencia, se eliminaron los incisos (7) y (8) que disponían la jurisdicción de la CEE sobre asuntos del

---

[28] Entirillado Electrónico del Proyecto del Senado 1314 de 13 de noviembre de 2019, 5ta Sesión Ordinaria, 18va Asamblea Legislativa, págs. 203-214.

[29] Íd., págs. 205-207.

[30] Íd., pág. 207. Véase, además, el texto aprobado del Art. 5.16 del Código Electoral de 2020, *supra*.

proceso y la referencia expresa al Capítulo XIII para la revisión judicial de una recusación adjudicada en los méritos.[31]

Ciertamente, el Art. 5.005 del Código Electoral del Siglo XXI, 16 LPRA sec. 4045 (derogado), en http://www.bvirtual.ogp.pr.gov/ogp/Bvirtual/leyesreferencia/PDF/Códigos/78-2011/78-2011.pdf, establecía que:

> [t]oda apelación a una decisión del Presidente (a) de una comisión local, excepto en los casos de recusación por domicilio, deberá notificarse en la misma sesión en que se tome la decisión apelada y antes de que se levante dicha sesión. […] **En los casos de recusaciones por domicilio, tanto el o la recusado (a) como el recusador o recusadora podrá apelar dentro del término de (10) días la determinación de la comisión local en el Tribunal de Primera Instancia designado de conformidad al Capítulo IV de esta Ley**. (Énfasis suplido).

También es innegable que la última oración del Art. 6.017 del Código Electoral del Siglo XXI, 16 LPRA sec. 4077 (derogado), instituía que "[t]anto el recusado como el recusador podrán apelar ante la Comisión la determinación dentro de los cinco (5) días siguientes, **excepto lo dispuesto para las recusaciones por domicilio electoral**". (Énfasis suplido). Así pues, este estatuto disponía expresamente un proceso distinto para la apelación de la determinación emitida por una Comisión Local sobre una recusación por razón de domicilio. Como vimos, éste fue el texto que se adoptó íntegramente en la última oración del Art. 5.16 del Código Electoral de 2020,

---

[31] <u>Entirillado Electrónico</u> del Proyecto del Senado 1314 de 13 de noviembre de 2019, *supra*, pág. 209. Véase, además, el texto aprobado del Art. 5.17 del Código Electoral de 2020, que se aprobó con esta eliminación.

*supra*. En efecto, el Art. 6.017 derogado corresponde en su totalidad al Art. 5.16 del Código Electoral de 2020.

El lenguaje en la ley vigente no puede ser atribuido a una adopción irreflexiva del texto de un estatuto anterior. Por lo menos, esa no debe ser nuestra primera alternativa. Un razonamiento en esa dirección en el caso ante nuestra consideración se derrota bajo la misma premisa de la que parte. Sería atribuirle a la Legislatura un ejercicio de copiar el lenguaje de un estatuto, pero, a su vez, brindarle una interpretación **contraria** a la norma que establecía el estatuto presuntamente copiado. Es decir, conllevaría el reconocimiento de que se adoptó el texto, pero con una intención legislativa opuesta. Ese es el efecto de la conclusión a la que llega una Mayoría de los miembros de este Tribunal.

Ahora bien, para ello recurren al Art. 4.5 del Código Electoral de 2020, *supra.* Si bien el inciso (4) de esta disposición tiene una frase que expresa "excepto en los casos de recusación contra un Elector", esto no debe llevarnos a sostener que se demuestra inexorablemente el objetivo de eliminar la distinción que existía entre las causales de las recusaciones de los electores en el estatuto derogado.[32]

---

[32] El Art. 4.5(4) del Código Electoral de 2020, *supra*, establece lo siguiente: "Toda apelación a una decisión del Presidente de la Comisión Local, **excepto en los casos de recusación contra un Elector**, deberá notificarse en la misma sesión en que se tome la decisión apelada y antes de que se levante dicha sesión y deberá hacerse constar en el acta de la reunión mediante la expresión de los fundamentos de la apelación. Además, en caso de que la parte apelante interese presentar un escrito adicional a la apelación, así como documentos de apoyo, los mismos deberán ser tramitados al Secretario en un término no mayor de cuarenta y ocho (48) horas. **Las recusaciones contra**

Ello, presuntamente bajo la premisa de que ahí no se menciona una norma distinta para las recusaciones por domicilio.

En primer lugar, debemos recordar que esta parte del Art. 4.5 del Código Electoral de 2020 estaba consignada en el Proyecto del Senado 1314 cuando se presentó originalmente en la Asamblea Legislativa.

En segundo lugar, el Art. 4.5 no es incompatible con colegir que, para propósitos de revisión, existe una distinción entre la recusación por domicilio con otras recusaciones. De hecho, cabe notar que el propio Art. 4.5(4) reconoce que éste **no regula** los acuerdos de las Comisiones Locales ni las apelaciones en lo referente a las recusaciones. En su lugar, nos dirige, entre otros, al Art. 5.16, el cual evidentemente **reconoce la intención legislativa de un trato distinto** al momento de revisar la determinación de una Comisión Local sobre las recusaciones por razón de domicilio.

Como adelanté, no cuestiono que la intención que emanaba del texto inicialmente propuesto en el Proyecto del Senado 1314, *supra,* era no distinguir entre causales de recusaciones. Sin embargo, esa no es la intención que surge del texto finalmente aprobado.

Las modificaciones que se realizaron durante el periodo de aprobación del Código Electoral de 2020 demuestran la evolución de lo que se persiguió establecer, a saber:

---

**Electores solo se presentarán, procesarán, evaluarán y adjudicarán siguiendo rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley**". (Énfasis suplido).

inicialmente, la revisión ante los tribunales, sin distinguir el tipo de recusación; y, posteriormente, la revisión de las recusaciones ante la CEE, **excepto en el caso de las recusaciones por domicilio.** En ese sentido, lo que nos correspondía era identificar la disposición que regiría el vacío estatutario.[33] **No puedo avalar la conclusión paradójica de que las recusaciones por domicilio se rijan por la misma norma de la que <u>se exceptúan expresamente</u>.**

Por el contrario, en vista de que el Código Electoral de 2020 acopió la excepción sobre las recusaciones por razón de domicilio que establecía el Código Electoral del Siglo XXI —estatuto que le asignaba la jurisdicción **a los tribunales**—, al amparo del Art. 5.16, *supra,* debimos remitirnos al Capítulo XIII. Especialmente, al Art. 13.2, *supra*, que establece las revisiones judiciales ante el Tribunal de Primera Instancia. A esos efectos, debo subrayar un asunto sumamente importante: el proceso de revisión judicial establecido en el Art. 13.2 —que la Opinión del Tribunal cataloga como "general"— es el mismo que disponía el Código Electoral del Siglo XXI para las apelaciones de las recusaciones por razón de domicilio.[34] Es decir, un **término**

---

[33] Véanse: <u>Muñiz Burgos, Inc. v. Mun. de Yauco</u>, 187 DPR 665, 689 (2013); <u>Fajardo v. DIP</u>, 126 DPR 619, 631 (1990). Véase, además, <u>Fajardo v. DIP</u>, *supra*, pág. 639 (Hernández Denton, J., opinión disidente).

[34] Véase Art. 4.001 del Código Electoral de Puerto Rico del Siglo XXI (Código Electoral del Siglo XXI), 16 LPRA sec. 4031 (derogado).

**de diez días para recurrir ante el Tribunal de Primera Instancia.**[35]

Resulta igualmente importante para nuestro análisis resaltar que la interpretación de la ley que se hace en la Opinión del Tribunal produce la **inefectividad e inoperancia** de una porción en el Código Electoral de 2020. Ello, sin buscar la interpretación que le daría **verdadero efecto al texto legislativo.**[36] En otros términos, la interpretación que realiza este Tribunal produce lo contrario a la norma de hermenéutica que hemos reconocido, pues convierte en inútil la excepción establecida en la última oración del Art. 5.16 del Código Electoral de 2020, *supra*.[37]

Distinto a la interpretación que se hace en la Opinión, el Código Electoral de 2020 muestra una intención clara de **distinguir** la revisión de las recusaciones por la causal de domicilio de las demás recusaciones. **A nuestro juicio, la lectura integral del Código Electoral de 2020 demuestra que la intención legislativa fue mantener la jurisdicción del**

---

[35] Véase Art. 13.2 del Código Electoral de 2020, *supra* ("Cualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la **Comisión Local** podrá, dentro de los **diez (10) días** siguientes a la notificación de esta, recurrir al **Tribunal de Primera Instancia** con la presentación de un recurso legal de revisión") (Énfasis y subrayado suplido). En todo caso, esta disposición es más diáfana que su predecesora, ya que reconoce expresamente la revisión judicial de una decisión de la Comisión Local. Véase Art. 4.001 del Código Electoral del Siglo XXI, 16 LPRA sec. 4031 (derogado). Véase, además, el Art. 5.005 del Código Electoral del Siglo XXI, 16 LPRA sec. 4045 (derogado) ("En los casos de recusaciones por domicilio, tanto el o la recusado (a) como el recusador o recusadora podrán apelar dentro del término de **diez (10) días** la determinación de la comisión local en el **Tribunal de Primera Instancia** designado de conformidad al **Capítulo IV** de esta Ley") (Énfasis suplido).

[36] Nadal v. American R. R. Company, 19 DPR 1080, 1082 (1913).

[37] Véanse: López v. C.E.E., 161 DPR 527, 543 (2004), haciendo referencia a Pueblo v. Cortés Rivera, 142 DPR 305, 316 (1997).

**Tribunal de Primera Instancia sobre este tipo de asuntos, como lo hacía el Código Electoral para el Siglo XXI.**[38] En ese sentido, a lo sumo, lo que hubo en el Código Electoral vigente fue una **omisión por inadvertencia** de señalar el Capítulo XIII, sobre revisiones judiciales, como se hacía en el Art. 5.17 del Proyecto del Senado 1314 antes de modificarse en el trámite legislativo.

Debo resaltar que, distinto a la Opinión que emite una Mayoría de los miembros de este Tribunal, nuestra conclusión es cónsona con el principio de agilidad y rapidez que se le debe brindar a estos asuntos. Añadir una etapa administrativa adicional ante la CEE para revisar las recusaciones por domicilio resultaría contrario a estos objetivos.[39] En efecto, como una contradicción, tiene la consecuencia de frustrar el mismo principio al que se hizo referencia en Gautier Vega *et al*. v. Com. Electoral PNP, 2020 TSPR 124, pág. 14 esc. 16, citando a Ríos Martínez, Com. Alt. PNP v. CLE, 196 DPR 289, 306 (2016); el de no "coartar el derecho de

_____

[38] Junta Dir. Cond. Montebello v. Fernández, 136 DPR 223, 234 (1994) ("Hemos sido renuentes a aceptar la carencia de jurisdicción, excepto en aquellos casos en los [cuales] el legislador la ha decretado en un lengua[j]e sin ambages. […] Nuestra renuencia a determinar ausencia de jurisdicción en estos casos es una concomitancia obligada de nuestra concepción de que, de ordinario, los tribunales de justicia están llamados a resolver los casos y controversias que se presentan ante ellos, concepción que tiene su origen en la disposición constitucional que establece el poder judicial"). En el caso ante nuestra consideración no surge la intención, sin ambages, de privar al foro primario de jurisdicción. Íd. Por el contrario, se dispone expresamente la intención de distinguir la apelación de la recusación por la causal de domicilio de las demás recusaciones, de más fácil adjudicación, que se mencionan en el Art. 5.16(1) del Código Electoral de 2020.

[39] De hecho, podría constituir un impedimento para que las posteriores determinaciones judiciales puedan advenir finales y firmes antes del evento electoral.

apelar de un ciudadano por razones que están totalmente fuera de su control".[40]

Finalmente, la norma de deferencia a la CEE que se aduce en la Opinión no se justifica en este caso. Primero, el Art. 13.1 del Código Electoral de 2020, *supra*, no sugiere que brindemos deferencia en este tipo de asuntos. Nótese que el elemento central de nuestra intervención no es pasar juicio sobre decisiones tomadas por la CEE a nivel administrativo. La pregunta era si el Tribunal de Primera Instancia tenía jurisdicción. Éste es un asunto eminentemente judicial.[41] Segundo, y atado a lo anterior, la deferencia que le brindamos ordinariamente a los órganos administrativos se basa en criterios de autolimitación judicial y no bajo la premisa de que la deferencia es impuesta por ley. Por ello, aun cuando un estatuto no sugiere alguna norma de deferencia, sino todo lo contrario, la hemos aplicado al adjudicar una controversia cuando ha sido prudente ante la pericia o conocimiento especializado del organismo revisado. Reitero, la deferencia debe estar basada en asuntos de verdadera

---

[40] Debo aclarar que la controversia que atendimos en <u>Gautier Vega</u> *et al*. v. Com. Electoral PNP, 2020 TSPR 124, era distinta en toda su extensión al caso ante nuestra consideración. En <u>Gautier Vega</u>, *supra*, únicamente debíamos resolver cuál era el periodo hábil para solicitar recusaciones para el evento electoral ante la pandemia por el COVID-19.

[41] <u>Asoc. Fcias. v. Caribe Specialty</u> *el al*., 179 DPR 923, 941 (2010) ("en el descargo de su función revisora, los tribunales apelativos **deberán distinguir entre cuestiones de interpretación estatutaria, en las que los tribunales son especialistas**, y cuestiones propias de la discreción o pericia administrativa") (Énfasis suplido); D. Fernández Quiñones, <u>Derecho administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 560.

pericia del ente administrativo.[42] Como mencioné, ello no se produce en este caso.

Por estos fundamentos hubiera validado la determinación de los tribunales inferiores, a los efectos de que el Tribunal de Primera Instancia tenía jurisdicción para revisar la determinación de la Comisión Local sobre la solicitud de recusación del Sr. Carlos M. Suárez Molina por la causal de domicilio.

En vista de que lo antes mencionado no hubiera dispuesto de la totalidad del recurso ante nuestra consideración, procedemos a expresarnos sobre los méritos del último error señalado por el Sr. Isaías Medina Morales (señor Medina Morales), recusador y Comisionado Electoral Alterno del Partido Nuevo Progresista en Cataño, en el recurso de *certiorari* ante nuestra consideración.

## II

El Código Electoral de 2020 se fundamenta, entre otras cosas, en el principio de "[e]mpoderar a los electores facilitando su acceso a los procesos relacionados con el ejercicio de su derecho al voto".[43] Ello, al reconocer al elector como "el eje y protagonista del sistema electoral sin limitaciones que, irrazonablemente menoscaben, limiten o compliquen el ejercicio del voto".[44]

El Art. 2.3(94) del Código Electoral de 2020, *supra*, define la recusación como un procedimiento para impugnar el

---

[42] Asoc. Fcias. v. Caribe Specialty *el al.*, *supra*, pág. 941.

[43] Exposición de Motivos del Código Electoral de 2020, *supra*.

[44] Íd.

estatus de un elector en el Registro General de Electores con el propósito de anular una petición de inscripción, excluir o inactivar a un elector del Registro General de Electores. Además, como es de esperarse, puntualiza que toda recusación deberá cumplir con los requisitos que establece el Código Electoral de 2020.

Según expresamos, el procedimiento de revisión judicial de una recusación por la causal de domicilio se rige por el Capítulo XIII del Código Electoral de 2020. El Art. 13.2(1)(a) del Código Electoral de 2020, *supra,* dispone que "[c]ualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión o la **Comisión Local** podrá, dentro de los diez (10) días siguientes a la notificación de esta, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de revisión". (Énfasis suplido). Además, instituye que la **parte promovente** "tendrá la responsabilidad de notificar, dentro de dicho término, copia del recurso de revisión a través de la Secretaría de la Comisión, así como a **cualquier otra parte adversamente afectada**, dentro del término para recurrir al Tribunal". (Énfasis suplido). Íd.

Lo anterior tiene una explicación claramente lógica. En un procedimiento de recusación la injerencia que tiene el recusador sobre el derecho al sufragio de un recusado los convierte a ambos en partes indispensables del referido trámite al poseer "un interés común sin cuya presencia no

puede adjudicars[e] la controversia".[45] Sin duda, la determinación de los foros judiciales afecta sus derechos o intereses en el proceso electoral. En ese sentido, el requisito de notificación resulta imperativo dado a que su incumplimiento frustraría a la vez su derecho a un debido proceso de ley.[46]

En el *Certiorari* el señor Medina Morales aduce como último error que el Tribunal de Apelaciones se equivocó al no revocar la determinación del foro primario por falta de jurisdicción. Ello, presuntamente porque el señor Suárez Molina no le notificó el escrito de revisión judicial ni el foro primario lo citó a la vista celebrada.

De un examen cuidadoso del recurso de *certiorari* que presentó el señor Medina Morales en el Tribunal de Apelaciones, resulta forzoso concluir que éste se limitó a un señalamiento de error general sobre la jurisdicción del foro primario sin discutir directamente la presunta falta de notificación.[47] El señor Medina Morales se circunscribió a

---

[45] En cuanto a la interpretación del concepto de parte indispensable en el procedimiento civil ordinario, "una parte indispensable es aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos por una determinación al estar ausente". Véanse: Vilanova *et al*. v. Vilanova *et al*., 184 DPR 824, 839 (2012); García Colón *et al*. v. Sucn. González, 178 DPR 527, 548 (2010). Conforme con ello, el interés común "tiene que ser de tal orden que impida producir un decreto sin afectarlo". Romero v. S.L.G. Reyes, 164 DPR 721, 733 (2005). Véase, además, J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, 2011, T. II, pág. 691.

[46] Véase Asoc. Residentes v. Montebello Dev. Corp., 138 DPR 412, 421 (1995). Véase, además, Soto Pino y. Uno Radio Group, 189 DPR 84, 90 (2013).

[47] En cuanto a la notificación de la vista, en la *relación de hechos procesales* que hizo ante el foro apelativo intermedio el señor Medina Morales se limitó a relatar que "no pudo comparecer a

esbozar someramente que el recurso de revisión judicial que se presentó en el Tribunal de Primera Instancia no establecía que el recusador fue notificado.[48]

Ahora bien, como resultado de lo anterior, conforme con lo ordenado por este Tribunal, el recurrido presentó su alegato. Allí, entre otras cosas, arguyó que el recurso de revisión judicial, intitulado como Escrito de Apelación, que presentó en el foro primario fue notificado a todas las partes.[49] Además, resaltó que el señor Medina Morales, como recusador, aceptó el recibo del documento. Como anejo de su alegato, el recurrido acompañó copia del Escrito de Apelación en que, en efecto, certifica "[q]ue el día 13 de agosto de 2020, notific[ó] con copia de la […] apelación a la Comisión Local de Elecciones apelada, al elector recusado, **al recusador** y al Secretario de la Comisión Estatal de elecciones". (Énfasis suplido). Cabe resaltar que este documento **contiene la firma del señor Medina Morales** e incluye la hora de su notificación. Por lo tanto, debimos resolver que fue notificado debidamente del recurso instado ante el foro primario.

---

la vista señalada pues el correo electrónico donde se señalaba la vista fue clasificado por su sistema de correos electrónicos como 'spam' y no se tuvo acceso a la citación". Apéndice del *Certiorari*, pág. 84. Esto es, sí recibió la citación a la dirección correcta. Fue su correo electrónico el que lo calificó mal. En ese sentido, el presunto defecto que el peticionario menciona ante este Tribunal (*Certiorari*, pág. 3), dado a que no formaría parte de un planteamiento jurisdiccional, fue renunciado al no señalarse expresamente ante el foro apelativo intermedio. Véase Ortiz v. A.R.Pe., 146 DPR 720, 724 (1998). De hecho, no hay una argumentación real de este planteamiento ante nosotros.

[48] Apéndice del *Certiorari*, pág. 84.

[49] Véase Anejo 1 del Alegato del Señor Carlos M. Suárez Molina.

**III**

Por los fundamentos expuestos, respetuosamente **disiento** de la Opinión que emite este Tribunal. Lo procedente en derecho era confirmar al Tribunal de Apelaciones y al Tribunal de Primera Instancia.


                                        Edgardo Rivera García
                                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Carlos M. Suárez Molina

    Recurrido

    v.                             CC-2020-0436     *Certiorari*

Comisión Local de Elecciones
de Cataño, *et al.*

    Peticionario

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico a 23 de octubre de 2020.

Es la segunda vez en este mes que una mayoría de los miembros de este Tribunal opta por reescribir el ordenamiento legal electoral vigente en nuestra jurisdicción para acceder a los caprichos del Comisionado Electoral del Partido Nuevo Progresista, en el Municipio de Cataño, quien ha visto en este Foro el lugar idóneo para corregir la comedia de errores que ha cometido en el desempeño de su cargo.[50] Al así hacerlo, mis compañeros y compañeras de estrado resuelven que el trámite para revisar una determinación adversa emitida por el presidente de una Comisión Local de Elecciones en un proceso de recusación domiciliaria se hará de igual manera a los demás tipos de recusaciones, entiéndase, acudiendo ante la Comisión Estatal de Elecciones y no ante el Tribunal de Primera Instancia.

---

[50] La primera ocasión fue el martes 13 de octubre de 2020, en el caso *Gautier Vega et al. v. Com. Electoral PNP*, 2020 TSPR 124, 205 DPR ___ (2020), en donde este Tribunal permitió que un acuerdo de los Comisionados Electorales enmendara el Art. 5.17 del Código Electoral de 2020, *infra*, y en consecuencia se extendiera el término para presentar recusaciones, en clara contravención del referido cuerpo de ley, proceder a todas luces incorrecto, razón por la cual nos vimos en la obligación de disentir.

Ello, en clara contravención a lo dispuesto por el legislador en el Código Electoral de 2020, *infra*, en cuanto a las recusaciones por domicilio.

Y es de esa manera que, a cielo descubierto y a pesar de nuestro desconcierto por la regularidad con la que ignoran las leyes que componen el ordenamiento jurídico puertorriqueño, esta Curia emite, --una vez más--, un dictamen que pone en evidencia las innecesarias alianzas con las posturas de determinado partido político, las cuales no deben estar presente en nuestro Sistema Judicial. Esta precipitada y a todas luces errónea decisión es, a su vez, producto de un proceso legislativo atropellado y carente de transparencia que dio lugar al actual Código Electoral, *infra*. Cuerpo de ley encargado de regir los eventos electorales puertorriqueños y que tiene como propósito salvaguardar el derecho fundamental que cobija a cada ciudadano y ciudadana de participar en un proceso electoral democrático, transparente y justo.

No obstante -- y como era de esperarse – la aprobación del nuevo Código Electoral, *infra*, ha traído consigo una serie de controversias que han de atenderse teniendo como norte la pureza y confiabilidad del proceso electoral que se avecina, lo cual peligra ante la coyuntura histórica actual, enmarcada en una pandemia que afecta nuestra vida como Pueblo y en eventos primaristas irregulares. Es por ello que, nuevamente, nos vemos en la obligación de enérgicamente disentir y aclarar lo que, a nuestro juicio, es el

mecanismo indicado para solicitar revisión de las determinaciones de las comisiones locales en cuanto a las solicitudes de recusación por domicilio. Veamos.

I.

Los hechos medulares que dieron margen al presente litigio no están en controversia. Allá para el 4 de agosto de 2020, la Comisión Local de Elecciones del Precinto Núm. 008 de Cataño (en adelante, "Comisión Local de Elecciones") emitió una determinación mediante la cual ordenó la recusación por domicilio electoral del señor Carlos Suárez Molina (en adelante, "señor Suárez Molina"). Surge de los hechos que este último residía en Cataño, sin embargo, a raíz de la pandemia del COVID, tomó la decisión de pernoctar en una residencia de su pareja consensual en Bayamón. Esto pues, su trabajo en el aeropuerto era considerado de alto riesgo y deseaba proteger a sus hijos y padre -- quien recién había sido operado de corazón abierto -- de un posible contagio con este peligroso virus.

Así las cosas, y por entender que la Comisión Local de Elecciones había errado, el señor Suárez Molina, oportunamente, presentó un recurso de apelación de recusación por domicilio ante el Tribunal de Primera Instancia, Región Judicial de Bayamón. Celebrada la vista evidenciaria de rigor, el Hon. Eduardo Rebollo Casalduc, juez que presidía los procedimientos, concluyó que el domicilio electoral del recusado era, en efecto, el Municipio de Cataño y no el de Bayamón, por lo cual razonó que la determinación de recusar al

señor Suárez Molina era improcedente. En consecuencia, el referido magistrado declaró con lugar el escrito de apelación instado por el recusado.

Inconforme con lo dictaminado por el Tribunal de Primera Instancia, el Comisionado Local del Partido Nuevo Progresista en el Municipio de Cataño, el señor Isaías Medina Morales (en adelante, señor Medina Morales), acudió ante el Tribunal de Apelaciones solicitando la revocación de la *Sentencia* emitida por el foro primario. En esencia, éste planteo que conforme a lo dispuesto en el Código Electoral de 2020, *infra*, el Tribunal de Primera Instancia carecía de jurisdicción para revisar una determinación de recusación por domicilio emitida por la Comisión Local de Elecciones, recayendo dicho procedimiento apelativo sobre la Comisión Estatal de Elecciones. En ese sentido, argumentó que el recusado debió haber agotado los remedios administrativos ante la Comisión Estatal de Elecciones antes de acudir en revisión ante el Tribunal de Primera Instancia. A dicha solicitud, el señor Suárez Molina se opuso.

Evaluados lo alegatos de ambas partes, el foro apelativo intermedio dictó *Sentencia*. Al así hacerlo, resolvió que, de conformidad con lo dispuesto en el Art. 13.2 del Código Electoral de 2020, *infra*, la apelación de una determinación de una Comisión Local de Elecciones, en cuanto a una recusación por domicilio,

no se presenta ante la Comisión Estatal de Elecciones, y sí ante el Tribunal de Primera Instancia.[51]

Aún insatisfecho, el Comisionado Local del Partido Nuevo Progresista en el Municipio de Cataño, el señor Medina Morales, acude ante nos mediante petición de *certiorari* y argumenta que el Tribunal de Apelaciones erró al decretar que el recusado podía acudir directamente al Tribunal de Primera Instancia para impugnar la recusación por domicilio en su contra. Además, sostiene que el foro apelativo intermedio erró al concluir que el Código Electoral de 2020, *infra*, no obligaba al recusado a agotar otros remedios administrativos antes de acudir ante el foro primario.

Examinados los planteamientos del señor Medina Morales, este Tribunal dictó una *Resolución* concediéndole un término de veinticuatro (24) horas a las partes con interés para que expresaran su posición sobre el particular.[52] Dicha *Resolución* fue oportunamente notificada a las referidas partes.

Cumpliendo con lo ordenado, compareció ante nos el actual Presidente de la Comisión Estatal de Elecciones, el Hon. Francisco Rosado Colomer, quien esbozó

---

[51] En lo pertinente, el Art. 13.2 del referido cuerpo de ley, *infra*, dispone:

> Con excepción de otra cosa dispuesta en esta Ley: (1) Cualquier Comisionado Electoral o parte adversamente afectada por una decisión, resolución, determinación u orden de la Comisión [Estatal de Elecciones] o la Comisión Local podrá, dentro de los diez (10) días siguientes a la notificación de esta, recurrir al Tribunal de Primera Instancia con la presentación de un recurso legal de revisión.

[52] La Jueza Presidenta Oronoz Rodríguez y quien suscribe hicimos constar que hubiésemos provisto *no ha lugar* al recurso de *certiorari* incoado por el señor Medina Morales.

señalamientos homólogos a los del señor Medina Morales. En resumen, éste aduce que es la Comisión Estatal de Elecciones quien posee la pericia para adjudicar la controversia relacionada a las recusaciones por domicilio, por lo cual se le debe dar deferencia para atender estos asuntos, excluyendo así al Tribunal de Primera Instancia de inmiscuirse en sus decisiones administrativas.

De igual forma, y en oposición, compareció ante esta Curia el señor Suárez Molina y arguyó que, a su juicio, tiene dos vías a su disposición para apelar la decisión de la Comisión Local de Elecciones en asuntos relacionados a las recusaciones por domicilio, a saber: 1) acudir al Tribunal de Primera Instancia dentro de diez (10) días desde la notificación de la determinación de la Comisión Local de Elecciones o, 2) recurrir ante la Comisión Estatal de Elecciones en el término de cinco (5) días contados a partir de que la Comisión Local de Elecciones emita su notificación. Por ello, señala que optó por acudir al Tribunal de Primera Instancia, según lo permite el Art. 13.2 (1) del Código Electoral de 2020, *infra*.

Trabada así la controversia y con el beneficio de la comparecencia de todas las partes con interés en el litigio, procedemos a exponer el derecho aplicable a la misma.

II.

Como es harto conocido, el derecho al voto de todo puertorriqueño y puertorriqueña, consagrado en el Art.

II, Sec. 2, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, es la columna vertebral de los principios democráticos que rigen nuestra vida como Pueblo. En específico, el texto de la precitada cláusula constitucional sostiene que las leyes adoptadas por la Asamblea Legislativa del País "[g]arantizarán la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto, y protegerán al ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". Art. II, §2, *supra*. Ahora bien, a pesar de estar enraizado en los más nobles principios de igualdad, el derecho al voto de los puertorriqueños y las puertorriqueñas, lamentablemente, no queda excluido de pugnas político-partidistas.

Así pues, en aras de fomentar un procedimiento electoral transparente que satisficiera las garantías procesales que así exige nuestra Constitución, allá para la década de los setenta, se aprobó la Ley Núm. 4-1977, según enmendada, conocida como Ley Electoral de Puerto Rico, mediante la cual se estableció en la Isla la Comisión Estatal de Elecciones y se dispuso todo lo relacionado a la organización de los eventos electorales. Posterior a ello, y con el paso del tiempo, la referida ley fue enmendada en varias ocasiones, y posteriormente derogada, siendo hoy día el Código Electoral de Puerto Rico de 2020, 2020 LPR 58, la ley vigente.

El mencionado Código Electoral persigue regular las funciones y deberes de la Comisión Estatal de Elecciones, y demás organismos electorales, como lo son las Comisiones Locales de Elecciones. Además de sus funciones reguladoras sobre los organismos electorales, el referido cuerpo de ley está también encargado de moderar el procedimiento de recusación de electores y electoras, el cual a su vez comprende las recusaciones por domicilio, objeto de la controversia ante nos.

En lo relacionado a los procesos de recusación, el Art. 2.3 (94) del nuevo Código Electoral, *supra*, establece que dicho procedimiento tiene dos vertientes. La primera de ellas busca anular una petición de inscripción, excluir o inactivar al Elector del Registro General de Electores, mientras que la segunda de ellas se refiere al acto de objetar todo voto que sea emitido de forma irregular a lo contemplado en la ley electoral. *Íd.*

Así las cosas, las personas llamadas a entender en todo proceso de recusación han de tener extremo cuidado, pues este acto tiene graves repercusiones, tanto para el recusado como para los partidos políticos. No olvidemos que al final del día lo que se busca a través de estos procedimientos es coartar el ejercicio de unos de los más fundamentales derechos constitucionales que tiene toda persona domiciliada en nuestra jurisdicción. *Granados v. Rodríguez Estrada I*, 124 DPR 1 (1989); *PPD v. Admor Gen. De Elecciones*, 111 DPR 199 (1981); *P.S.P v. Com. Estatal de Elecciones*,

110 DPR 400 (1980). Debido a lo anterior, los procesos de recusación se rigen por unos preceptos muy particulares que, conforme a los Arts. 3.8 y 4.4 del Código Electoral de 2020, *supra*, tanto el Presidente de la Comisión Estatal de Elecciones, como los presidentes de las Comisiones Locales de Elecciones, vienen llamados a observar.

En lo pertinente a la controversia que nos ocupa, el Art. 5.16 del Código Electoral de 2020, *supra*, establece los fundamentos por los cuales ha de presentarse una solicitud de recusación y qué debe contener dicha solicitud. A su vez, dispone la manera en que se recusará a los electores, como también el procedimiento de apelación de una determinación de la Comisión Local de Elecciones. *Íd.*

En cuanto a esto último, del texto del antedicho artículo se desprende que, **salvo por una contada excepción**, el recusado o el recusador tiene la potestad de apelar una determinación de la Comisión Local de Elecciones, en asuntos relacionados a las recusaciones, ante la Comisión Estatal de Elecciones. *Íd.* **Al respecto, el Art. 5.16 del Código Electoral de 2020, *supra*, claramente establece que "[t]anto el recusado como el recusador podrán apelar ante la Comisión [Estatal de Elecciones] la determinación dentro de los cinco (5) días siguientes, excepto lo dispuesto para las recusaciones por domicilio electoral".**

Es decir, de conformidad con la normativa antes expuesta, todo recusador o recusado por edad, muerte, incapacidad mental, impostura, ciudadanía, o porque el elector conste inscrito en el Registro General de Electores en más de una ocasión, que no salga favorecido por una determinación de la Comisión Local de Elecciones, -- en un término de cinco (5) días contados a partir de la decisión del referido organismo electoral --, podrá acudir ante la Comisión Estatal de Elecciones para revisar la decisión que se haya tomado en su caso. Ahora bien, lo anterior no es el procedimiento a seguir en los casos de **recusados o recusador por domicilio**, a quienes por haber sido clara y expresamente excluidos de lo dispuesto en el Art. 5.16 del Código Electoral del 2020, *supra*, para la revisión de las decisiones de la Comisión Local de Elecciones, les aplica lo dispuesto en el Art.13.2 del mencionado cuerpo de ley, artículo que regula todo lo relacionado a las revisiones en el Tribunal de Primera Instancia.

**El precitado Art. 13.2 del Código Electoral vigente, *supra*, dispone, en lo pertinente, que cualquier Comisionado Electoral o parte adversamente afectada por una determinación de la Comisión Estatal de Elecciones o de la Comisión Local de Elecciones podrá recurrir ante el Tribunal Primera Instancia mediante la presentación de un recurso de revisión, dentro de los diez (10) días siguientes a la notificación de la resolución, determinación u orden.**

En otras palabras, todo recusador o recusado por razón de domicilio -- en un término de diez (10) días contados a partir de la decisión de la Comisión Local de Elecciones -- podrá acudir ante el Tribunal de Primera Instancia para revisar la decisión que se haya tomado en su caso.

Y lo anterior no es de extrañar. Así es el tratamiento que históricamente se les ha dado a estos asuntos.

Recordemos que el Código Electoral recién aprobado -- entiéndase el Código Electoral de 2020, *supra*, -- derogó el Código Electoral de 2011, el cual, en su Art. 5.05, disponía que "[e]n los casos de recusaciones por domicilio, tanto el o la recusado (a) como el recusador o recusadora pod[ían] apelar dentro del término de diez (10) días la determinación de la Comisión Local en el Tribunal de Primera Instancia designado de conformidad al Capítulo IV de es[a] Ley." Art. 5.005 del Código Electoral de 2011, 16 LPRA sec. 5.005 de la Ley Electoral (derogada 2020). A su vez, el Capítulo IV de la precitada disposición legal disponía que "[c]ualquier parte adversamente afectada por una resolución, determinación u orden de la Comisión pod[ía], dentro de los diez (10) días siguientes a la notificación de la misma, recurrir ante el Tribunal de Primera Instancia mediante la presentación de un escrito de revisión." Art. 4.001 del Código Electoral de 2011, *supra*. Esto último es cónsono con el **procedimiento de revisión judicial** establecido en el

discutido Art. 13.2 del actual Código Electoral, *supra*. Proceso que, como sabemos, ofrece mayores garantías de confiabilidad.

En esa dirección, conviene recordar aquí las palabras del entonces Juez Asociado de este Tribunal, Hon. Antonio S. Negrón García, cuando, en su Opinión Concurrente en *P.P.D. v. Barreto Pérez*, 11 DPR 199 (1981), sentenció que:

> "el sistema de recusación, aunque de importancia para depurar que solo electores legítimos ejerciten el voto, por constituir una intervención drástica contra la presunción que cobija a todo elector inscrito de que es apto y está calificado, a la par que vulnera la secretividad del sufragio, es de rigurosa y estricta observancia. **El ciudadano no puede ni debe estar sujeto ni expuesto, <u>sin resguardo constitucional o judicial</u>, a recusaciones fáciles viciosas, sorpresivas, dudosas, incompletas o defectuosamente hechas.** (Énfasis suplido). *P.P.D. v. Barreto Pérez*, *supra*, (Negrón García, opinión concurrente).

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de las controversias ante nuestra consideración. Como una mayoría de este Tribunal así no lo hizo, procedemos -- desde el disenso -- a disponer del caso que nos ocupa de la manera que el Código Electoral nos exige.

Ello lo hacemos, teniendo siempre presente que "cuando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu." Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14. Cónsono con este precepto, este foro ha expresado que cuando es así, "[n]o se puede interpretar que [la ley] provee

algo que el legislador no intentó proveer, ya que esto conlleva invadir las funciones de la Asamblea Legislativa." *Lasalle v. Junta Dir. A.C.C.A.*, 140 DPR 694, 696 (1996); *Otros v. Puerto Rico*, 140 DPR 538, 545 (1996); *Caguas Bus Line v. Sierra*, 73 DPR 743, 750 (1952). Nos explicamos.

III.

Como mencionamos anteriormente, en el presente caso, el Comisionado Local del Partido Nuevo Progresista en el Municipio de Cataño, el señor Medina Morales, arguye que, de conformidad con lo dispuesto en el Art. 5.16 del Código Electoral de 2020, *supra*, el procedimiento adecuado para impugnar una recusación por domicilio estriba en acudir primero a la Comisión Estatal de Elecciones con un recurso de apelación. No le asiste la razón.

Y es que el señor Medina Morales parece olvidar -- de manera conveniente -- las disposiciones legales que está llamado a seguir. **Está claro en la ley electoral recién aprobada, entiéndase el Código Electoral de 2020, que lo dispuesto en su Art. 5.16 no es de aplicación a las recusaciones por domicilio.** Dicho proceso el legislador entendió debía llevarse a cabo ante el Tribunal de Primera Instancia.

Al así hacerlo, podemos inferir el deseo del legislador de reiterar el deber ineludible que tienen los foros judiciales -- y particularmente de los jueces o juezas como operadores jurídicos -- de velar por el derecho constitucional de todo puertorriqueño y

puertorriqueña al sufragio universal, igual, directo y secreto. Visto desde ese crisol, la perspicacia del juez o jueza es vital a la hora de decidir entre vindicar los derechos de un ciudadano o ciudadana o avalar determinaciones plagadas por matices -- que de manera imponente -- se presentan ante nosotros como viciosas, dudosas y parcializadas. Y es, precisamente, en este último escenario, que los jueces y juezas tenemos la responsabilidad de garantizar el fiel cumplimiento de aquellas leyes que componen nuestro ordenamiento legal electoral y que responden a los imperativos constitucionales que pretenden custodiar los más fundamentales derechos que nos cobijan a todos y todas los que en este País habitamos.

En fin, y a modo de epílogo, la revisión de las determinaciones de la Comisión Local de Elecciones, en asuntos relacionados a las recusaciones por domicilio, es una tarea exclusiva del Tribunal de Primera Instancia. Lo anterior es así debido a que, **"[e]l ciudadano [o ciudadana] no puede ni debe estar sujeto ni expuesto, <u>sin resguardo constitucional o judicial</u>, a recusaciones fáciles viciosas, sorpresivas, dudosas, incompletas o defectuosamente hechas"**. *P.P.D. v. Barreto Pérez, supra*. En esa tarea, el ojo del juez o jueza es de vital importancia.

Lamentablemente, lo que hoy decide una mayoría de este Tribunal -- quitarle la jurisdicción que por ley tiene el Tribunal de Primera Instancia para revisar recusaciones por domicilio, abrogándosela así a la

Comisión Estatal de Elecciones -- no solo atenta contra el derecho constitucional al sufragio universal, igual, directo y secreto, sino que -- a todas luces -- también atenta contra el derecho de cada recusado o recusada a esclarecer, de manera inmediata, y ante la presencia de un juez o jueza, las razones tras su recusación, lo cual, a su vez pudiese violentarle las garantías constitucionales que le amparan. Para eso no están los tribunales de justicia.

IV.

Siendo ello así, nuevamente nos vemos en la obligación de enérgicamente disentir de este craso e injusto proceder que, como bien establecimos al principio de este escrito, solo pretende subsanar los continuos errores del Comisionado Electoral Local del Partido Nuevo Progresista en el Municipio de Cataño, en el desempeño de su cargo.

Ángel Colón Pérez
Juez Asociado